PRICE, Appellee,

v.

AUSTINTOWN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellant.

[Cite as *Price v. Austintown Local School Dist. Bd. of Edn.*, 178 Ohio App.3d 256, 2008-Ohio-4514.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 164.

Decided Sept. 5, 2008.

Engler & Associates and David L. Engler, for appellee.

Britton, Smith, Peters & Kalail Co., David Kane Smith, Susan R. Hartung, and Elise C. Keating, for appellant.

WAITE, Judge.

{¶ 1} Appellee, John Price, filed a complaint against appellant, Austintown Local School District Board of Education (the "board"), alleging breach of

contract, defamation, and malicious prosecution. The board raised the defense of governmental immunity and filed a motion for judgment on the pleadings with respect to the defamation and malicious-prosecution claims. When the motion was overruled, the board filed this appeal. Based on R.C. 2744.02(A), the board is immune from civil liability unless appellee's claims fall within one of the specific exceptions found in R.C. 2744.02(B). These exceptions include a variety of negligent acts, but do not cover intentional torts. Defamation and malicious prosecution are both intentional torts, and there is no exception in R.C. 2744.02(B) for these claims. Therefore, the board is correct that the trial court should have sustained the motion on the pleadings with respect to the defamation and malicious-prosecution claims. The judgment of the trial court is reversed as to those two claims, and the case is remanded for further action on appellee's breach-of-contract claim.

{¶ 2} According to appellee's complaint, he was employed as a bus driver by the board from March 1, 2000, until December 8, 2005. He was a member of a union, and his union contract contained provisions governing sick leave.

{¶ 3} On February 1, 2003, the board erroneously paid $6,288.87 to appellee's bank account. Appellee notified a superior of the overpayment, but he did not return the money.

{¶ 4} In September 2005, appellee requested to use part of his sick leave to care for his father. When he returned to work, he was questioned about the possible violation of the terms of his sick leave. While this issue was being investigated, the board became aware of its overpayment to appellee in 2003 and that the money had not been repaid. Appellee was asked to resign based on the wrongful retention of $6,288.87 and because of sick-leave violations. Appellee did resign.

{¶ 5} In July 2006, a criminal complaint was filed against appellee for theft of funds. Appellee returned the funds to the board, and the complaint was dismissed. Appellee then asked to be reinstated to his former position, but his request was denied.

{¶ 6} On December 7, 2006, appellee filed a complaint in the Mahoning County Court of Common Pleas. The complaint alleged breach of contract, defamation, and malicious prosecution. The only defendant in the case is the board. The defamation and malicious-prosecution claims both stem from the board's involvement in filing a criminal complaint against appellee for theft. One of the defenses raised by the board against appellee's complaint was that of governmental immunity pursuant to R.C. 2744.02.

{¶ 7} On April 11, 2007, the board filed a motion for judgment on the pleadings, and appellee filed a response in opposition. The motion was overruled without explanation on August 23, 2007. This timely appeal followed.

{¶ 8} An order that denies a defense of statutory immunity to a political subdivision is a final, appealable order pursuant to R.C. 2744.02(C). *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878.

{¶ 9} Appellee has not filed a brief in this appeal. We may accept the board's statement of the facts and issues as correct and reverse the judgment if the argument contained in the board's brief reasonably appears to sustain such an action. App.R. 18(C).

## ASSIGNMENT OF ERROR

{¶ 10} "The trial court erred to the prejudice of the Austintown Local School District Board of Education ('Defendant' or 'Board') by not dismissing Plaintiff John Price's ('Plaintiff' or 'Price') claims of defamation and malicious prosecution on the basis of Ohio Revised Code Chapter 2744 immunity."

{¶ 11} The board filed its motion for judgment on the pleadings, raising the defense, as a matter of law, of governmental immunity under R.C. 2744.02. A Civ.R. 12(C) motion for judgment on the pleadings is designed to review the pleadings, and only the pleadings, on matters of law. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 166, 63 O.O.2d 262, 297 N.E.2d 113. Dismissal under Civ.R. 12(C) is appropriate, "where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931.

{¶ 12} The complaint acknowledges that the board is a school district operating under the laws of the state of Ohio. A school district is a political subdivision of the state of Ohio. *Brown v. Monroeville Local School Dist. Bd. of Edn.* (1969), 20 Ohio St.2d 68, 49 O.O.2d 347, 253 N.E.2d 767; R.C. 2744.01(F). According to R.C. 2744.02(A)(1), a political subdivision is not liable in damages in a civil action for loss to persons or property by any act or omission in connection with governmental and proprietary functions of the political subdivision or its employees. This is a broad and very general grant of immunity for most acts or omissions by a political subdivision. The determination of whether governmental immunity under R.C. 2744.02 applies is a question of law to be decided by the court. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862.

{¶ 13} Claims of governmental immunity are subject to a three-tiered analysis. *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 10. The first tier determines whether the defendant falls within the terms of the general immunity established by R.C. 2744.02(A)(1). The second tier examines whether one of the five exceptions to general immunity, found in R.C. 2744.02(B), apply. If one of the exceptions applies, we must turn to the third tier to determine whether the governmental immunity can be reinstated through one of the defenses found in R.C. 2744.03.

{¶ 14} The board argues that any part that it might have played in prosecuting appellant for theft falls within the general grant of immunity set forth in R.C. 2744.02(A)(1). The board argues that appellee was required to allege facts that could show that one of the five exceptions to immunity found in R.C. 2744.02(B) apply to the claims in his complaint. The board argues that none of the five exceptions to immunity applies to appellee's allegations. The fifth exception to immunity involves liability imposed on a political subdivision by a specific statute and this clearly does not apply in the instant case. The board argues that the four remaining exceptions in R.C. 2744.02(B) involve claims of negligence:

{¶ 15} " * * *[A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

{¶ 16} "(1) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle * * *.

{¶ 17} " * * *

{¶ 18} "(2) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

{¶ 19} "(3) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *.

{¶ 20} "(4) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *."

{¶ 21} The board contends that appellee's claims of defamation and malicious prosecution are intentional torts and are not based on principles of

negligence. The board submits that since neither cause of action involves proof of mere negligence, none of the remaining exceptions in R.C. 2744.02(B) can apply.

{¶ 22} The board is correct that political subdivisions are immune from liability from intentional-tort claims. *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105. The tort of malicious prosecution is an intentional tort, given that malice is one of the elements of the tort: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus. Since there is no exception to governmental immunity for intentional torts in R.C. 2744.02(B), it is apparent from the pleadings that the board is immune from prosecution for malicious prosecution.

{¶ 23} The analysis is not quite so simple for appellee's defamation claim. The board claims that defamation is also an intentional tort. We agree that it is usually classified as intentional, along with such torts as assault, battery, false imprisonment, trespass, conversion, intentional infliction of emotional distress, and fraud. *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 249, 659 N.E.2d 317. The board also cites a specific case in which immunity was granted to a school board in a defamation case for the very reason that defamation is an intentional tort. *Coleman v. Cleveland School Dist. Bd. of Edn.*, 8th Dist. Nos. 84274 and 84505, 2004-Ohio-5854, 2004 WL 2491662. Nevertheless, simply calling an act an intentional tort does not always make it so, and there was no analysis done in the *Coleman* case explaining why defamation was treated as an intentional tort.

{¶ 24} In an intentional tort, the word "intent" is usually understood to mean a subjective volitional decision (known as direct intent) to cause harm; or an act or omission that is substantially certain, under an objective analysis, to cause harm. *Buckeye Union Ins. Co. v. New England Ins. Co.* (1999), 87 Ohio St.3d 280, 289, 720 N.E.2d 495. Mere negligence does not satisfy the intent requirement of an intentional tort. *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 97, 559 N.E.2d 699. A tort, though, may be defined in terms of both direct intent and negligence, such as intentional infliction of emotional distress and negligent infliction of emotional distress.

{¶ 25} In Ohio, the tort of defamation may be either negligent or intentional, depending on the context. In Ohio, the basic definition of defamation consists of a false publication, made with some degree of fault, reflecting injuriously on a person's reputation or exposing a person to public hatred, contempt, ridicule, shame, or disgrace, or affecting a person adversely in his or

her trade, business or profession. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283. In some cases, the required minimum degree of fault is negligence. *Jacobs v. Budak*, 156 Ohio App.3d 160, 2004-Ohio-522, 805 N.E.2d 111, ¶ 50; *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206, 687 N.E.2d 481. Therefore, "when examining the elements of defamation, it is clear that a person can defame another through negligent conduct." *Aronson v. Akron* (Apr. 4, 2001), 9th Dist. No. CA 19816, 2001 WL 326875. Because a defamation action could be based on an allegation of mere negligence, it may possibly fall within one of the four exceptions to immunity found in R.C. 2744.02(B)(1) through (4), which are all premised on negligence. Id.

{¶ 26} A closer look at the specific exceptions to immunity arising from negligent conduct found in the statute reveals only one possible exception that might apply. The first exception refers to the negligent operation of a motor vehicle, which is not alleged in the complaint. The third exception refers to negligent failure to keep roads in good repair, which is not alleged in the complaint. The fourth exception deals with liability due to physical defects of buildings, which is not alleged in the complaint. The only possible exception that may be applicable is the second exception, listed in R.C. 2744.02(B)(2), which states: "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." A "proprietary function" in this context means a function not specifically listed as a governmental function in R.C. 2744.01(C)(1) and that is a function that is not normally engaged in by nongovernmental persons. R.C. 2744.01(G)(1).

{¶ 27} Examples of proprietary functions are the operation of a hospital, the establishment of a public utility or public transportation system, or the operation of a public stadium or off-street parking garage. R.C. 2744.01(G)(2). Specific examples of "governmental functions" are such things as providing police and fire emergency service, providing public education, maintaining courthouse and jails, regulating traffic, operating a board of health or mental health facility, flood control, urban renewal, or providing building inspections. R.C. 2744.01(C)(1). Also included in the list of governmental functions are the following:

{¶ 28} " * * *

{¶ 29} "(f) Judicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functions;

{¶ 30} " * * *

{¶ 31} "(i) The enforcement or nonperformance of any law; * * * " R.C. 2744.01(C)(2).

{¶ 32} Appellee's defamation claim arises from the allegation that the board assisted in the prosecution of a criminal theft charge. The allegation in the complaint necessarily involves the notion that the board was acting or assisting in a prosecutorial matter, and thus, was engaged in the enforcement of a law; namely, the law defining criminal theft. Here, appellee's defamation claim is premised on the fact that the board was engaging in a governmental function, and governmental functions retain the blanket protection of statutory immunity for both negligence and intentional torts. "[W]ith respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts." *Wilson*, supra, 70 Ohio St.3d at 452, 639 N.E.2d 105. Appellee has raised no argument in opposition, and it appears from the record that the defamation claim does not fall within one of the five exceptions to immunity listed in R.C. 2744.02(B). Therefore, the board is entitled to judgment on grounds of statutory immunity.

{¶ 33} The board's assignment of error is well taken. The trial court should have granted judgment to the board with respect to the defamation and malicious-prosecution claims. There remains pending a breach-of-contract claim that is not part of this appeal. The judgment of the trial court is reversed, and this case is remanded for further action as to the breach-of-contract claim.

Judgment reversed<br>and cause remanded.

DeGenaro, P.J., and Vukovich, J., concur.